UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
TRUSTEES OF THE LAUNDRY, DRY CLEANING
WORKERS AND ALLIED INDUSTRIES HEALTH
FUND, WORKERS UNITED; TRUSTEES OF THE
LAUNDRY, DRY CLEANING WORKERS AND
ALLIED INDUSTRIES RETIREMENT FUND,
WORKERS UNITED; and TRUSTEES OF THE
LAUNDRY AND DRY CLEANING WORKERS
EDUCATION AND LEGAL SERVICES FUND,　　　　　　　　　　**OPINION & ORDER**

　　　　　　　　　　　　　　　Plaintiffs,　　　　　　　　　　No. 16-CV-2939 (CS)

　　　　　　　- against -

OCEANSIDE INSTITUTIONAL INDUSTRIES,
INC.,

　　　　　　　　　　　　　　　Defendant.
-------------------------------------------------------------------------x

Appearances:

David C. Sapp
Alicare, Inc. – Fund Administrator
White Plains, New York
*Counsel for Plaintiffs*

Richard Gertler
Gertler Law Group, LLC
East Meadow, New York
*Counsel for Defendant*

Seibel, J.

　　Before the Court is Plaintiffs' motion for summary judgment. (Doc. 34.) For the reasons stated below, Plaintiffs' motion is GRANTED in part and DENIED in part.

1

## I. BACKGROUND[1]

Plaintiffs are the Laundry, Dry Cleaning Workers and Allied Industries Health Fund, Workers United (the "Health Fund"), the Laundry, Dry Cleaning Workers and Allied Industries Retirement Fund, Workers United (the "Retirement Fund"), the Laundry, Dry Cleaning Workers and Allied Industries Education and Legal Services Fund (the "Legal Fund," and, together with the Health Fund and Retirement Fund, the "Funds"), and the Trustees of the Funds (together with the Funds, "Plaintiffs"). Plaintiffs are entrusted under law to collect and protect workers' and retirees' pension and welfare benefits. (Doc. 38 Ex. 5 ("D's 56.1 Resp.") ¶ 1.) The Trustees of each of the Funds are fiduciaries under § 3(21)(A) of the Employee Retirement Income Security Act of 1974 ("ERISA"). (*Id.* ¶ 2.) Defendant Oceanside Institutional Industries, Inc. is a New York corporation with its principal place of business in Oceanside, New York, and was an employer within the meaning of the relevant statutes at all relevant times. (*Id.* ¶¶ 3, 4.)

Defendant entered into a collective bargaining agreement, and supplemental agreements thereto (together the "CBA"), with the Laundry, Distribution and Food Services Joint Board, Workers United (the "Union"). (*Id.* ¶ 5.) The CBA required Defendant to make contributions to the Funds, as well as to submit Defendant's payroll books and records to the Funds' audits to ensure compliance with its contribution obligations. (*Id.* ¶¶ 3, 5, 6, 9.) Defendant also entered into the Funds' Trust Agreements, each of which provides that "[a]n Employer is deemed to have accepted and become bound by this Agreement and Declaration of Trust by contributing to or having an obligation to contribute to the Fund." (*Id.* ¶¶ 7, 8.) The Trust Agreements for the Health Fund and Retirement Fund provide that they are entitled to 1.00% interest per month, and for the Legal Fund 1.50% interest per month, on delinquent contributions, measured from the

---
[1] The facts are undisputed unless otherwise noted, and are taken from the parties' Local Rule 56.1 submissions unless otherwise noted.

date such contributions were due until the date they were paid. (*Id.* ¶ 21.) The Trust Agreements for each of the Funds also provide that the Funds are entitled to liquidated damages equal to the greater of either the interest due on the delinquent contributions or 20.00% of the delinquent contributions. (*Id.* ¶ 23.)

Defendant failed to timely make contributions to the Funds for the months of February through June 2016. (*Id.* ¶ 15.) On or about May 17, 2016, Defendant remitted the principal amount of contributions in the amount of $80,477.61 and employee remittance reports for February 2016, but did not remit the interest and liquidated damages owing on that amount. (*Id.* ¶ 16.) On or about June 17, 2016, Defendant remitted the principal amount of contributions in the amount of $82,151.89 and employee remittance reports for March 2016, but did not remit the interest and liquidated damages owing on that amount. (*Id.* ¶ 17.) On or about July 19, 2016, Defendant remitted the principal amount of contributions in the amount of $74,291.62 and employee remittance reports for April 2016, but did not remit the interest and liquidated damages owing on that amount. (*Id.* ¶ 18.) On or about August 23, 2016, Defendant remitted the principal amount of contributions in the amount of $68,101.68 and employee remittance reports for May 2016, but did not remit the interest and liquidated damages owing on that amount. (*Id.* ¶ 19.) On or about October 18, 2016, Defendant remitted the principal amount of contributions in the amount of $63,988.90 and employee remittance reports for June 2016, but did not remit the interest and liquidated damages owing on that amount. (*Id.* ¶ 20.)

In November 2016, the Funds audited Defendant's payroll records for the period of April 1, 2014 through June 30, 2016 (the "Audit Period") and determined that Defendant's contributions for the period April 1, 2016 through June 30, 2016 were deficient in the principal amount of $2097.01 (the "Audit Deficiency"). (*Id.* ¶¶ 10, 11.) By letter dated November 8,

2016, the Funds demanded payment from Defendant for the Audit Deficiency, as well as interest and liquidated damages. (*Id.* ¶ 12.) Except as discussed below (*see* pp. 6-7 below), Defendant has not remitted these amounts to the Funds. (*Id.* ¶ 13.)

Plaintiffs commenced this action on April 20, 2016, (Doc. 1), and filed an amended complaint on July 11, 2016, (Doc. 17). Defendant answered the amended complaint on July 22, 2016. (Doc. 19.) The parties proceeded through discovery, and Plaintiffs filed the instant motion on May 15, 2017. (Doc. 34.)

## II. DISCUSSION

### A. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to "present evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477

U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

**B. Analysis**

Plaintiffs assert that Defendant owes them: (1) the Audit Deficiency; (2) the interest and liquidated damages on the Audit Deficiency; (3) the interest and liquidated damages on the since-paid delinquent contributions for February 2016 through June 2016; and (4) attorneys' fees and costs. (Doc. 36 ("Ps' Mem.") at 1.)

5

Employers, like Defendant, who are parties to a collective bargaining agreement that requires them to contribute to pension, health, or welfare funds must make any delinquent contributions in full. *See* 29 U.S.C. § 1145; *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187-88 (2d Cir. 2015) (*per curiam*) (employer liable for delinquent contributions where it was party to CBA that required contributions and it failed to make contributions); *Bd. of Trustees of Local, 295/Local 851 – I.B.T. Emp'r Grp. Pension Tr. Fund v. J & J Air Container Station*, No. 06-CV-7720, 2010 WL 3911656, at *3 (S.D.N.Y. Sept. 29, 2010) ("[T]here is no dispute that Defendants have failed to remain current under their agreement with the Funds. Defendants are thus liable to the Funds for their delinquent contributions."). It is undisputed that the CBA obligated Defendant to make contributions to the Funds, (D's 56.1 Resp. ¶¶ 3, 5, 6), that the Funds' audit uncovered that Defendant made deficient contributions for the period April 1, 2016 through June 30, 2016, (*id.* ¶ 11), and that Defendant was delinquent in its principal contributions for the months February through June 2016, (*id.* ¶ 15). Where a fund is entitled to collect unpaid contributions from an employer, the court must also award the fund "interest on the unpaid contributions" in the amount set forth by the applicable agreement and the greater of either "interest on the unpaid contributions, or liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(B)-(C); *see Gesualdi v. Seacoast Petroleum Prods., Inc.*, 97 F. Supp. 3d 87, 96-97 (E.D.N.Y. 2015).

1. Audit Deficiency

Plaintiffs assert that their November 2016 audit uncovered that Defendant's contributions from April 1, 2016 through June 30, 2016 were deficient in the amount of $2097.01. Defendant does not seem to dispute this, instead taking issue with the interest and liquidated damages that

accrued on the Audit Deficiency. (Doc. 38 ("D's Mem.") at 3-5; *see* D's 56.1 Resp. ¶¶ 11-12.) Indeed, Defendant has apparently remitted the $2097.01 to Plaintiffs during the pendency of this motion, (*see* Doc. 40 ¶ 5 & Ex. C), so Plaintiffs' motion is denied as moot to the extent it seeks payment of the $2097.01 Audit Deficiency.

    2. <u>Interest & Liquidated Damages</u>

Defendant first argues that, even if Plaintiffs are entitled to interest and liquidated damages, they have calculated the amounts incorrectly. Whether Plaintiffs' calculations are correct does not affect their entitlement to damages set forth in the statute, which I will discuss first.

Defendant argues that because Plaintiffs accepted payment of the principal delinquent contributions for February through June 2016 without objection or reservation of rights, they should not now be allowed to seek interest and liquidated damages on those contributions. (D's Mem. at 5-9.) Defendant argues that there is a fact issue as to whether Plaintiffs accepted the principal payments "as full satisfaction of Plaintiffs' claims." (*Id.* at 6.) According to Defendant, sometime in April 2016 it offered to pay the principal amounts due in exchange for Plaintiffs foregoing collection of interest and liquidated damages. (D's Mem. Ex. 4 ("Gertler Aff.") ¶ 7.)[2] Again according to Defendant, Plaintiffs did not reject this offer and did not propose a counter offer, (*id.* ¶ 10), and began accepting payments for the principal amounts thereafter, (*id.* ¶ 11, 12). Defendant apparently "believe[d] that the payments of the contribution, consistent with the settlement offer . . . , would resolve this matter." (*Id.* ¶ 11.)

Defendant essentially argues that Plaintiffs should be equitably estopped from pursuing the interest and liquidated damages because of Defendant's reliance on its own belief that

---

[2] The Gertler Affidavit states that settlement discussions began in April 2014, but I assume he meant April 2016 given that Defendant fell behind in its contributions beginning in February 2016. (Gertler Aff. ¶ 4.)

7

Plaintiffs would waive those sums. Any claim of equitable estoppel requires, among other things, a promise or misrepresentation by Plaintiffs and reasonable reliance on that promise or misrepresentation by Defendant. *See Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 85-86 (2d Cir. 2001) (promissory estoppel requires a promise, reliance, injury caused by reliance, and injustice if promise not enforced, and applies in ERISA context only "under extraordinary circumstances") (internal quotation marks omitted); *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993) (equitable estoppel requires material representation, reliance and damages, and applies in ERISA cases only in extraordinary circumstances); *see also Greifenberger v. Hartford Life Ins. Co.*, 131 F. App'x 756, 759 (2d Cir. 2005) (summary order) (extraordinary circumstances necessary to equitable estoppel in ERISA case requires "conduct tantamount to fraud").

Defendant has established neither. Taking Defendant's version of the facts as true, it has produced no evidence of a promise by Plaintiffs to forego collection of interest and liquidated damages. And its reliance on its own "belief" that Plaintiffs did so by accepting payment of principal amounts undisputedly owed is hardly reasonable, especially given that settlement discussions continued past the date of Defendant's first principal payment. (*See* Doc. 40 Ex. A.) *See Bridge v. Transpersonnel, Inc.*, No. 03-CV-2437, 2004 WL 2034075, at *8 (N.D. Ill. Sept. 10, 2004) (funds were not equitably estopped from collecting penalties for late contributions from employer because funds never promised they would not collect penalties, and even if they did, employer could not reasonably rely on such a promise because funds maintained demand for penalties). Moreover, Defendant could have easily confirmed with Plaintiffs whether they intended to forego interest and liquidated damages, or changed its own conduct in the absence of agreement by Plaintiffs. *See Bridge*, 2004 WL 2034075, at *8 ("[T]he company had a

8

convenient means of ascertaining the true facts on this issue; i.e., asking the Fund whether it intended to collect interim payments and, if not, requesting a written waiver. Thus, [the company] cannot avoid ERISA's statutory penalties under an estoppel theory."). Plaintiffs' silence hardly justifies any sort of reliance on Defendant's part.

In any event, estoppel would allow Defendant to avoid statutory penalties only in extraordinary circumstances, *see Greifenberger*, 131 F. App'x at 759; *Devlin*, 274 F.3d at 86; *Lee*, 991 F.2d at 1009, which are not present here. Defendant fell behind on its contributions, and Plaintiffs seek the amounts and penalties to which they are entitled as a result. I am thus constrained by the clear statutory language entitling Plaintiffs to collect interest and liquidated damages. *See Trustees of Bldg. Serv. 32B-J Health Fund v. Triangle Servs., Inc.*, No. 05-CV-2546, 2006 WL 3408572, at *3 (S.D.N.Y. Nov. 22, 2006) ("Congress has provided ERISA plaintiffs with a potent weapon to wield against all delinquent contributors, and we are constrained both by the clear language of Section 1132(g)(2) and by the Second Circuit case law, to grant plaintiffs the full relief requested here."); *Fanning v. S.M. Lorusso & Sons, Inc.*, No. 02-CV-11859, 2004 WL 187330, at *4 (D. Mass. Jan. 26, 2004) (funds were not estopped from collecting contributions and penalties where they initially misstated the amount due, because "the apportionment of fault is irrelevant[, and a]s a matter of law, the Fund is seeking what is contractually due regardless of who is to blame"); *Farrell v. Metro. Relocations Inc.*, No. 95-CV-557, 1996 WL 19223, at *3 (E.D.N.Y. Jan. 11, 1996) (rejecting defendant's "equitable plea to this Court's discretionary power" because the court has no discretion and "both interest and liquidated damages . . . plus attorneys' fees are mandated under the remedial scheme provided by 29 U.S.C. § 1132(g)"). Plaintiffs' motion is thus granted as to their entitlement to interest and

liquidated damages on the Audit Deficiency as well as on the principal contributions from February through June 2016.

   3. Fees & Costs

29 U.S.C. § 1132(g)(2)(D) requires that the Funds' "reasonable attorney's fees and costs . . . be paid by the [D]efendant." *See Bricklayers & Allied Craftworkers*, 779 F.3d at 189-90 ("[I]t is clear that under 29 U.S.C. § 1132, the corporate defendant is liable for unpaid contributions, interest, liquidated damages provided under the plan, attorney's fees and costs, and any other legal or equitable relief that court deems appropriate."). Defendant does not offer any argument as to why attorneys' fees and costs are not warranted, nor could it – they are required by statute. Plaintiffs' motion is thus granted as to reasonable attorneys' fees and costs. *See Triangle Servs., Inc.*, 2006 WL 3408572, at *2 (granting summary judgment on claim for "array of relief listed in Section 1132(g)(2) even though defendant has now paid the late contributions in full").

   4. Calculations

Defendant argues that, even if Plaintiffs are entitled to interest and liquidated damages, they have miscalculated the amounts. There are some questions as to Plaintiffs' calculations that remain unresolved. For example, Plaintiffs have offered two different amounts for the June 2016 principal contribution. (*See* Doc. 39 ("Ps' Reply") at 7.) Accordingly, the Court will refer this matter to Magistrate Judge Davison for a Report and Recommendation as to the amounts owing for interest and liquidated damages. Once that issue is resolved, Plaintiffs may make their application for attorneys' fees and costs.

**III. CONCLUSION**

For the reasons stated above, Plaintiffs' motion is GRANTED as to their entitlement to: 1) interest and liquidated damages on a) the Audit Deficiency and b) the delinquent principal contributions from February through June 2016, and 2) reasonable attorneys' fees and costs. Plaintiffs' motion is DENIED as moot as to the Audit Deficiency. The matter will be referred to Magistrate Judge Davison for a Report and Recommendation as to the interest and liquidated damages amounts. The Clerk of Court is respectfully directed to terminate the pending motion. (Doc. 34.)

**SO ORDERED.**

Dated: October 12, 2017
      White Plains, New York

                                                  CATHY SEIBEL, U.S.D.J.